LINCOLN S.T. ASHIDA   4478
Corporation Counsel

HARRY P. FREITAS   5633
BRANDON A.K. GONZALEZ   7413
Deputies Corporation Counsel
County of Hawai'i
Hilo Lagoon Centre
101 Aupuni Street, Suite 325
Hilo, Hawai'i  96720
Telephone: (808) 961-8251
Facsimile: (808) 961-8622
E-mail: hfreitas@co.hawaii.hi.us
         corporationcounsel@co.hawaii.hi.us

Attorneys for Defendant JOSEPH BOTELHO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI#

| | |
|---|---|
| WENDELL TANGARO,<br><br>Plaintiff,<br><br>vs.<br><br>JOSEPH BOTELHO, COUNTY OF HAWAI`I, AND JOHN DOES 1-10,<br><br>Defendants. | Civil. No. 03-00211 JMS/LEK<br><br>MOTION FOR RECONSIDERATION OF DEFENDANT JOSEPH BOTELHO'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO LR 60.1.(b); MEMORANDUM OF AUTHORITIES;  CERTIFICATE OF SERVICE<br><br>**Hearing:**<br>**Date:**<br>**Time:**<br>**Judge:  J. Michael Seabright**<br><br>Trial Date:<br>Date:    March 7, 2006<br>Time:   9:00 a.m.<br>Judge: J. Michael Seabright |

s:\lit\tangaro\doc\recon botelho msj\1-6-06\HPFfc.wpd

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| WENDELL TANGARO,<br><br>        Plaintiff,<br><br>   vs.<br><br>JOSEPH BOTELHO, COUNTY OF HAWAI`I, AND JOHN DOES 1-10,<br><br>        Defendants. | Civil. No. 03-00211 JMS/LEK<br><br>MOTION FOR RECONSIDERATION OF DEFENDANT JOSEPH BOTELHO'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO LR 60.1.(b) |

MOTION FOR RECONSIDERATION OF DEFENDANT JOSEPH BOTELHO'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO LR 60.1.(b)

     Defendant Joseph Botelho ("Officer Botelho"), by and through his undersigned attorney, moves the court for reconsideration of Officer Botelho's summary judgment pursuant to a change in law.

     This motion is based upon Rules 7, 43(e) and 56, Federal Rules of Civil Procedure, LR 56.1 and 60.1, the separate concise statement with the attached declaration of Officer Botelho and Exhibit "1," memorandum of authorities, the records and files herein and the evidence and argument to be elicited upon hearing of this motion.

     Dated: Hilo, Hawai'i, January 6, 2006.

                                  JOSEPH BOTELHO, Defendant

                                  By  /s/ Harry P. Freitas
                                      HARRY P. FREITAS
                                      Deputy Corporation Counsel
                                      His Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| WENDELL TANGARO,<br><br>Plaintiff,<br><br>vs.<br><br>JOSEPH BOTELHO, COUNTY OF HAWAI`I, AND JOHN DOES 1-10,<br><br>Defendants. | Civil. No. 03-00211 JMS/LEK<br><br>MEMORANDUM OF AUTHORITIES |

MEMORANDUM OF AUTHORITIES

I. STATEMENT OF THE CASE

On May 5, 2003, Attorney Eric A. Seitz filed a complaint on behalf of Wendell Tangaro ("Tangaro") against Joseph Botelho ("Officer Botelho") and the County of Hawai`i ("County"). The complaint alleges that on or about April 17, 2002, Officer Botelho used excessive force when he shot Tangaro, who was operating a motor vehicle, in the neck.

Summary Judgment Motions pertaining to the County and Officer Botelho were heard on August 2, 2004. Pursuant to an order filed on August 5, 2004, the County's motion for summary judgment was granted and Officer Botelho's motion for summary judgment was denied.

On December 13, 2004, the United States Supreme Court made a ruling in *Brosseau v. Haugen*, 543 U.S. 194, 125 S.Ct. 596, 160 L.Ed. 2d 583, 599 (2004), which affects this case. In addition, the United States District Court, District of Alaska ruled on a similar case in *Randall v. City of Fairbanks*, 352 F.Supp.2d 1028 (2005).

Based on these new case rulings, Officer Botelho seeks reconsideration of his previous motion for summary judgment and requests that this Court rule in a

manner consistent with *Brosseau* that Officer Botelho is entitled to qualified immunity because his actions fell in the "hazy border between excessive and acceptable force." *Brosseau* at 125 S.Ct. at 601.

II. FACTUAL BACKGROUND

On April 17, 2002, at approximately 3:00 a.m., Roger Starbuck ("Starbuck"), the owner of a Laundromat located on Shipman Street, heard noises from the Laundromat that sounded like someone breaking into the coin operated washers and dryers. Starbuck called 911 and reported that someone was breaking into the Laundromat machines. Officer Amuimuia responded to the call and arrived at approximately 3:16 a.m. Upon Officer Amuimuia's arrival, he noticed a male seated in a sedan parked on the street just opposite the Laundromat. This male matched the description of the theft suspect reported to the police. Officer Amuimuia approached this male, later identified as Justin Aoki ("Aoki"), noticed that Aoki had some coins, that the license plate number to the sedan Aoki was seated in matched the license reported to the police, and requested the male to exit the vehicle and step to the rear of the sedan.

Officer Amuimuia noticed that Officer Botelho had arrived, had parked his vehicle in the roadway on the passenger side of the sedan, had exited his vehicle and was approaching Officer Amuimuia and Aoki. Officer Botelho observed Officer Amuimuia speaking with Aoki, and also noticed another male lying in the back seat of the sedan. At this time, Officer Amuimuia noticed Starbuck standing at the entrance of the Laundromat with a video tape in his hand and left Aoki with Officer Botelho and walked over to Starbuck.

Officer Botelho asked Aoki to step to the rear of the sedan and began to question Aoki about the reported incident. At this time, Officer Botelho realized that he did not have his notebook to take notes, informed Aoki to remain at the rear of the sedan, and returned to his subsidized police vehicle to retrieve his notebook.

While at his vehicle, Officer Botelho noticed that Aoki did not remain at the

2

rear of the sedan, but had returned to the driver's seat of the sedan, and appeared to be talking to the male lying on the back seat of the sedan. As Officer Botelho exited his vehicle and began to return to the sedan, Officer Grouns arrived at the scene.

At this time, the male lying in the back seat of the sedan, later identified as Wendell Tangaro ("Tangaro"), exited the sedan, yanked Aoki out of the driver's seat of the sedan, entered the driver's seat and shut the driver's side door. Officer Botelho approached the passenger side door of the sedan and attempted to open the passenger door, but Tangaro reached over and locked the passenger door before Officer Botelho could open the door. Officer Botelho then reached through the partially open window of the passenger door to unlock the door that Tangaro had just locked. At his point, Tangaro started the sedan, revved the engine and accelerated the vehicle forward slightly. Being cautious not to get his hand caught in the window and dragged along the road, Officer Botelho removed his hand from the sedan window.

Tangaro revved the engine again, accelerated in reverse screeching the tires and turned the sedan as he reversed. Officer Grouns, who had parked his vehicle approximately 20 feet to the rear of the sedan, jumped out of his subsidized vehicle because he thought his vehicle would get struck by the reversing sedan. Officer Botelho, who was standing near the front passenger door stepped back as Tangaro reversed so as not to be struck by the front passenger corner of the sedan as it reversed and turned. Officer Grouns instructed Aoki to get off the road and took control of Aoki.

Tangaro's action of reversing and turning the vehicle placed Officer Botelho directly in the path of the sedan when Tangaro stopped the vehicle. Officer Botelho moved to his left to get out of the path of the vehicle and yelled for Tangaro to stop. Tangaro revved the engine of the vehicle and began to accelerate forward. Officer Botelho continued to move to his left, out of the path of the sedan

3

yelling for Tangaro to stop, but the sedan continued to move forward towards Officer Botelho. When the sedan was within five feet of Officer Botelho's location and he could not get out of the path of the sedan, fearing that he would be struck by the accelerating sedan, Officer Botelho drew his firearm and fired once at the sedan. The bullet went through the center of the front windshield of the sedan striking Tangaro in the neck. Once Officer Botelho fired the first shot, the sedan stopped moving forward and no additional shots were fired.

The sedan slowly rolled forward and came to rest against the curb of Shipman Street, also striking a parking meter.

Officer Botelho was appointed as a police officer on February 16, 1982. He was trained in the use of firearms and was utilizing a 9MM authorized sidearm issued by the Hawai'i County Police Department which he was qualified to carry.

### III.    DISCUSSION

Qualified immunity protects government officials who perform discretionary functions when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Moreover, qualified immunity protects law enforcement officials who reasonably believe they are acting lawfully in carrying out their duties. *Mackinney v. Nielsen,* 69 F.3d 1002, 1005 (9th Cir. 1995); *Act Up! /Portland v. Bagley,* 988 F.2d 868, 871 (9th Cir. 1993). This protection is premised upon the need to protect government officials who are required to exercise discretion. *Harlow v. Fitzerald,* 457 U.S. at 818; *Pierson v. Ray,* 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, -- L.Ed.-- (1967). The protection of qualified immunity is afforded officials ". . . to encourage the vigorous exercise of that discretion." *Butz v. Economy,* 438 U.S. 478, 506, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895, 916 (1978); *Scheuer v. Rhodes,* 416 U.S. 232, 239-240 , 94 S.Ct. 1683, 1688, 40 L.Ed.2d 90, 98-99 (1974). Qualified immunity is thus a "protective" rule which "provides ample support to

all but the most plainly incompetent or those who knowingly violate the law." *Burns v. Reed,* 500 U.S. 478, 494-95 (1991).

The Ninth Circuit Court of Appeals has repeatedly held that the defense of qualified immunity is available to police officers in excessive force cases. *See, e.g., Scott v. Henrich,* 39 F.3d 912 (9th Cir. 1994), *cert. denied*, 515 U.S.1159, 115 S.Ct. 2612, 132 L.Ed. 2d 855 (1995).

According to the Supreme Court of the United States, qualified immunity operates to shield an officer from conduct, which, though constitutionally deficient, "reasonably misapprehends the law governing the circumstances she is confronted with." *Brosseau v. Haugen*, 543 U.S. 194, 125 S.Ct. 596, 599, 160 L.Ed. 2d 583, 599 (2004).

"Determining whether a law enforcement officer is entitled to qualified immunity involves the consideration of two questions: '1) Was the law governing the officer's conduct clearly established?  2) Under that law, could a reasonable officer have believed that his conduct was lawful?'" *Acosta v. City and County of San Francisco,* 83 F.3d 1143, 1147 (9th Cir. 1996)(citations omitted).

**The focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct**. *Brosseau v. Haugen,* 543 U.S. 194, 125 S.Ct. 596, 599, 160 L.Ed. 2d 583, 599 (2004).  (Emphasis added.)

The facts in *Brosseau,* although similar, are more egregious then the facts in this case because the defendant in *Brosseau* shot the plaintiff in the back while he was fleeing while in our case Officer Botelho fired while he was still in the path of Plaintiff's vehicle.

In *Brosseau,* the Plaintiff, who was being investigated on theft charges and other drug related charges, locked himself into his vehicle in order to evade the officer pursuing him.  The officer drew her gun and ordered the Plaintiff out of the vehicle but the Plaintiff refused to heed her commands.  The officer then

5

proceeded to strike the driver's side window of the Plaintiff's vehicle with the butt of her handgun, causing it to shatter on the third or fourth strike. Next, the officer reached into the vehicle and attempted to take the Plaintiff's keys. The officer struck the plaintiff with her handgun in the struggle, but her efforts failed and the Plaintiff succeeded in starting his vehicle. As the vehicle began to move the officer stepped back and to the left, away from the vehicle, and fired a single shot through the rear driver's side window hitting the Plaintiff in his back. The Plaintiff suffered a collapsed lung as a result of the wound and filed a 42 U.S.C. §1983 action alleging that the officer's conduct violated his 4th amendment rights.

The *Brosseau* trial court dismissed the case on summary judgment, holding that the defendant-officer was entitled to summary judgment. On appeal, the Ninth Circuit reversed the trial court's grant of summary judgment because it found that the defendant-officer was not entitled to qualified immunity. However, on writ of certiorari, the Supreme Court of the United States reversed Ninth Circuit's denial of qualified immunity to the defendant because The Supreme Court of the United States found, that the parties could "point […] only [to] a handful of cases relevant to the situation that the [Defendant] was confronted. [That is] whether [it was unreasonable for an officer] to shoot a […] felon, set on avoiding capture through vehicular flight when persons in the immediate area are at risk from that flight." *Brosseau*. at 125 S.Ct. at 600.

Accordingly, the Supreme Court determined that none of the cases presented by either party squarely governed the case at hand and that the conflicting outcomes of the various, similarly situated cases presented by both parties clearly indicated that the defendant's actions fell in the "'hazy border between excessive and acceptable force'" in which qualified immunity applies. *Brosseau* at 125 S.Ct. at 600.

Similarly, in *Randall v. The City of Fairbanks* 352 F. Supp.2d. 1028 (2005), the U.S. District Court for the District of Alaska granted qualified immunity to a

6

defendant police officer who shot and killed a suspect fleeing in a vehicle, because "the law was not clearly established when [used against the decedent]." *Id.* at 1030.

In *Randall*, the decedent victim eluded police in a high speed chase for an hour prior to stopping at an intersection and coming into contact with the defendant police officer. The officer exited his vehicle at the intersection, stepped into the street, and stood in front of the decedent's vehicle, which proceeded toward him at a "slow, walking pace." *Id.* at 1031, 1034-1035. When the van came within a car's length of the officer, he drew his pistol and pointed at the decedent, and, seeing the gun, the decedent ducked down into his seat. *Id.* The vehicle either stopped, or maintained its slow, walking pace, but came into contact with the officer's shins. The officer then fired a single, downward shot at decedent and killed him. *Id.*

In deciding the officer's motion for qualified immunity, the *Randall* court found that although the decedent's vehicle came into contact with the defendant it was not the type of contact that could inflict serious harm to the officer, and that the facts, when taken the light most favorable to the plaintiff, did not indicate that the officer had probable cause to believe that the decedent posed a immediate risk of harm to himself. *Id.* at 1035. However, the *Randall* court nevertheless determined that the officer was entitled to qualified immunity because "[t]he law at the time of the shooting involved only a few relevant decisions […and thus,] the officer's actions fell within the 'hazy border between excessive and reasonable force' rather than within clearly established law." *Id.* at 1036-1037.

In light of the decisions handed down in *Brosseau* and *Randall*, because no preexisting case clearly establishes the rule prohibiting police officers from using deadly force in circumstances like those in the instant case, Officer Botelho's conduct, if not deemed to be objectively reasonable under the totality of circumstances, must fall into the "hazy border between excessive and reasonable force," to which qualified immunity applies.

7

IV.  CONCLUSION

This Court should reconsider its previous ruling on Officer Botelho's motion for summary judgment and pursuant to new case law should grant Officer Botelho's motion for summary judgment because his actions fell in the "'hazy border between excessive and acceptable force'" in which qualified immunity applies.

Dated: Hilo, Hawai'i, January 6, 2006.

JOSEPH BOTELHO, Defendant

By  /s/ Harry P. Freitas
    HARRY P. FREITAS
    Deputy Corporation Counsel
    His Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| WENDELL TANGARO,<br>Plaintiff,<br><br>vs.<br><br>JOSEPH BOTELHO, COUNTY OF HAWAI`I, AND JOHN DOES 1-10,<br><br>Defendants. | Civil. No. 03-00211 JMS/LEK<br><br>CERTIFICATE OF SERVICE |

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing document was served upon the following by mailing the same, postage prepaid, on January 6, 2006:

ERIC A. SEITZ
LAWRENCE I. KAWASAKI
Attorneys at Law
820 Mililani Street, Suite 714
Honolulu, Hawai`i 96813
    Attorneys for Plaintiff


  /s/ Harry P. Freitas
HARRY P. FREITAS
Deputy Corporation Counsel
County of Hawai`i