ORIGINAL

ERIC A. SEITZ
ATTORNEY AT LAW
A LAW CORPORATION

ERIC A. SEITZ          1412
LAWRENCE I. KAWASAKI   5820
820 Mililani Street
Suite 714
Honolulu, Hawai'i 96813
Telephone:   533-7434
Facsimile:   545-3608

Attorneys for Plaintiff

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 2 6 2006

at 3 o'clock and 31 min. P M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| WENDELL TANGARO,<br><br>         Plaintiff,<br><br>    vs.<br><br>JOSEPH BOTELHO, COUNTY OF<br>HAWAI'I, AND JOHN DOES 1-10,<br><br>         Defendants. | CIVIL NO. 03-00211 JMS/LEK<br><br>PLAINTIFF'S MEMORANDUM IN<br>OPPOSITION TO MOTION FOR<br>RECONSIDERATION OF DEFENDANT<br>JOSEPH BOTELHO'S MOTION FOR<br>SUMMARY JUDGMENT;<br>CERTIFICATE OF SERVICE<br><br>**Hearing**:<br>Date: February 13, 2006<br>Time: 10:00 a.m.<br>Judge: J. Michael Seabright<br><br>**Trial**:<br>Date: March 7, 2006<br>Time: 9:00 a.m.<br>Judge: J. Michael Seabright |

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
MOTION FOR RECONSIDERATION OF DEFENDANT
JOSEPH BOTELHO'S MOTION FOR SUMMARY JUDGMENT

Defendant Botelho seeks reconsideration of the Court's prior denial of his motion for summary judgment on the basis of qualified immunity based on the Supreme Court's decision in Brosseau v. Haugen, 543 U.S. 194, 125 S.Ct. 596, 160 L.Ed.2d 583

(2004), and a decision of the United States District Court, District of Alaska in Randall v. City of Fairbanks, 352 F.Supp.2d 1028 (D.C.AK 2005) which he contends constitute an applicable intervening change in controlling law requiring a reversal of this court's prior denial of qualified immunity.

For the reasons set forth below Plaintiff submits that Defendant Botelho's motion should be denied.

I.   Applicable Law

When determining a defendant's entitlement to qualified immunity on a motion for summary judgment the Court must first consider whether, taken in the light most favorable to the plaintiff, the facts alleged show that officer's conduct violated a constitutional right.  If, and only if, the answer to the above is in the affirmative, the court then considers whether the constitutional right was clearly established.  A constitutional right is clearly established if it would be clear to a reasonable officer that his conduct was unlawful in the particular situation the officer confronted.  Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

The seizure of a fleeing unarmed nondangerous burglary suspect by the use of deadly force violates the Fourth Amendment, but where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others, it is not constitutionally unreasonable to prevent an escape by using deadly force.  Tennesse v. Garner, 471

U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

In Brosseau v. Haugen, supra, the Supreme Court addressed a case involving a suspect in a nonviolent burglary with a known felony no-bail warrant for drug and other offenses who had been fleeing from law enforcement officers on foot for thirty minutes during which time officers also learned that the suspect tried to seek refuge at the home of a female neighbor. With an officer in pursuit the suspect jumped in his vehicle and locked the door. When the officer arrived at the suspect's vehicle the officer pointed her gun at the suspect and ordered him to get out of the vehicle. The suspect ignored the officer's command and continued to search for the keys so he could get his vehicle started. The officer repeated her command and hit the driver's side window several times with her gun, with the third or fourth such blow shattering the window. The officer then reached into the vehicle to remove the keys and even struck the suspect with the barrel and butt of her gun. Despite all of the above, the suspect was undeterred and proceeded to start his vehicle and drive away. As the suspect moved away the officer shot the suspect in the back. Despite being shot, the suspect admittedly then "stood on the gas," navigated a "small, tight space" to avoid other vehicles, swerved across the neighbor's lawn, and continued down the street for about a half block until he finally brought his vehicle to a stop when he passed out. Id.; Haugen v. Brosseau, 339 F.3d 857 (9th Cir. 2003).

In its opinion, the Supreme Court took issue with the application of general tests for determining whether an officer had fair notice that his conduct was unlawful and instructed the lower courts to consider the specific factual context of the case. The Supreme Court ruled that "[T]he relevant, dispositive inquiry in determining that a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Accordingly, the Court ruled that where the undisputed evidence shows that a suspect "had proven he would do almost anything to avoid capture," and that he posed a major threat to others, the officer's actions fall in the "hazy border between excessive acceptable force." Because the relevant case law in this area is in conflict and fails to "clearly establish" that an officer's use of deadly force in such circumstances is unlawful, the officer is entitled to qualified immunity. Comparing, Cole v. Bone, 993 F.2d 1328 (8th Cir. 1993)(holding that officer did not violate the Fourth Amendment when he shot the driver of an 18-wheel tractor-trailer after the driver had sped through a toll booth without paying the toll; had engaged the police in a high-speed pursuit in excess of 90 miles per hour on a busy highway during the holiday season, and where in the course of the pursuit, the driver passed traffic on both shoulders of the interstate, repeatedly attempted to ram several police cars, drove more than 100 vehicles off the road, ran through several

roadblocks, and continued driving after the officer shot out the wheels of the fugitive's truck); Smith v. Freland, 954 F.2d 343 (6th Cir. 1992)(holding that officer did not violate the Fourth Amendment when he shot a suspect after the suspect led a police officer on a high-speed chase for 2.6 miles, reaching speeds in excess of 90 miles per hour; when the officer had cornered the suspect's vehicle in a field, the suspect drove directly toward the police car on two occasions, forcing the officer to move out of the way; where the suspect drove around a police roadblock; where the suspect then drove into a residential street, turned his car around on a lawn and crashed directly into the officer's car; and where the suspect had backed his car up and was zooming around the officer's car smashing into a fence and gate as he did so when he was shot); Estate of Starks v. Enyart, 5 F.3d 230 (7th Cir. 1993)(holding that officer was not entitled to qualified immunity on motion for summary judgment where officers shot an auto theft suspect after the suspect, when confronted by three officers, ignored the order of one of the officers to get out of the car; where the suspect then slammed shut and locked the driver's side door when the officer tried to open it; the suspect then reversed the car into the officer's car trying to leave; when seeing his escape path was blocked by a utility pole, the suspect reversed the car to improve his angle coming close to striking another officer; and the suspect then floored the accelerator to drive away after which the third officer moved out

from behind the utility pole and shot the suspect)[1]; Cowan ex

---

[1] Also referencing, Cowan ex rel. Estate of Cooper, 352 F.3d 756 (2nd Cir. 2003)(affirming denial of summary judgment for defendant where there was an issue of fact as to whether suspect's vehicle was bearing down on defendant officer when the officer shot plaintiff _after_ officer had attempted to arrest plaintiff's companion for a suspected drug offense; where plaintiff and her companion could not produce a driver's license; plaintiff's companion then ran into a nearby wooded area where the officer lost him; where, as the officer was walking back to his police vehicle, the plaintiff drove her vehicle towards the officer; where there was evidence showing the plaintiff's vehicle was traveling slowly and that the officer was not in the path of the vehicle when he fired the fatal shot); Pace v. Capobianco 283 F.3d 1275 (11th Cir. 2002)(holding that officers did not violate plaintiff's Fourth Amendment right and accordingly are entitled to qualified immunity where officers had fired as many as twelve shots at Plaintiff _after_ an officer had pulled plaintiff's vehicle over for driving without headlights; plaintiff had no driver's license on him and gave the officer a false name and social security number; where the suspect then broke away and ran to his car, started it; when the officer with his gun in one hand and pepper spray in the other reached through the vehicle's window and sprayed the suspect with pepper spray; undeterred the suspect then drove off; the officer then pursued the suspect and a high speed chase ensued; during the pursuit on several occasions the suspect swerved his car toward pursuing police cars; drove through someone's front yard at 50-60 miles per hour and passed by the house; almost hit an elderly motorist when driving on the wrong side of the road; accelerated towards a police car trying to block the road; after 15 minutes of high-speed, reckless flight the suspected turned his vehicle into a dead-end cul-de-sac officers blocked the suspect's vehicle; and officers shot at plaintiff's vehicle as plaintiff's vehicle was moving forward); Scott v. Clay County, Tennessee, 205 F.3d 867, 877(6th Cir. 2000)(holding that defendant officers were entitled to qualified immunity on basis that officer's shooting of plaintiff did not violate plaintiff's rights under the Fourth Amendment where officers shot plaintiff _after_ officers had observed the vehicle in which plaintiff was a passenger driving erratically through an intersection with tires squealing then weave off the pavement and turning off onto another road at a hazardous speed; the vehicle's speed rose dangerously rocketing past and narrowly missing another officer and his unmarked vehicle; with an officer in pursuit with his siren and blue light flashing the suspect led officers on a high speed chase during which the driver of the vehicle admitted he forced at least one

rel. Estate of Cooper, 352 F.3d 756 (2nd Cir. 2003)(affirming denial of summary judgment for defendant where there was an issue of fact as to whether suspect's vehicle was bearing down on defendant officer when the officer shot plaintiff *after* officer had attempted to arrest plaintiff's companion for a suspected drug offense; where plaintiff's companion ran into a nearby wooded area where the officer lost him; where, as the officer was walking back to his police vehicle, the plaintiff drove her vehicle towards the officer; where there was evidence showing the plaintiff's vehicle was traveling slowly and that the officer was

---

motorist off the road and that he might have crossed the yellow line risking the safety of others; after chasing the vehicle for over twenty minutes at speeds ranging from 85-100 miles per hour the driver lost control of the vehicle while attempting a sharp turn at 75-80 miles per hour, skidded off the road crashed into a roadside guardrail coming to a stop; when officers approached the vehicle suddenly accelerated rapidly forward requiring the officer to leap out of its path; in an apparent attempt to get back on the roadway, the vehicle then proceeded in the direction of another officer a third officer fired five bullets toward the driver and then another four bullets towards the vehicle's tires); McCaslin v. Wilkins, 183 F.3d 279, 288-296 (3rd Cir. 1999)(holding that officers not entitled to qualified immunity where officers shot and killed plaintiff *after* observing plaintiff swerve across the centerline of a highway; when officers pursued plaintiff he refused to pull off the road; the ensuing chase reached speeds occasionally exceeding 100 miles per hour; when officers tried several times to stop plaintiff's vehicle plaintiff resisted and evaded capture; when an officer tried to block the vehicle's path with his car the plaintiff drove his vehicle into the officers car causing both vehicle's to slide onto the median; when an officer then ordered the plaintiff to exit his vehicle the plaintiff refused to comply; and when another officer tried to remove plaintiff from his vehicle plaintiff drove away; officers tried unsuccessfully to stop the vehicle by firing shots at tires; officers resumed their chase of plaintiff who swerved off the road and slid down an embankment and then drove back up the embankment when he was shot).

not in the path of the vehicle when he fired the fatal shot); Compare also, <u>Randall v. City of Fairbanks</u>, 352 F.Supp.2d 1028 (D.C.AK 2005)(holding that officer <u>was</u> entitled to qualified immunity because the law that the officer was violating the plaintiff's Fourth Amendment right was not clear when the officer shot the plaintiff <u>after</u> the suspect had been observed by an officer at about 4:00 p.m. driving a van through a red light and reaching speeds close to 80 miles per hour when the officer pursued him; where the officer ended his chase when it appeared the suspect's driving was going to get more reckless; the officer then observed suspect run another stop sign after which the officer lost track of the suspect; a second officer then observed the suspect driving rapidly through an area with pedestrians present and run another stop sign and another red light; a third officer who observed the suspect driving through a parking lot with pedestrians present and running another stop sign as he left the parking lot; the suspect was observed cutting through a shopping mall parking lot, cross a highway and enter a business building parking lot without ever slowing down; where a fourth officer then picked up the chase and clocked the suspect going 45-56 miles per hour in a 30 miles per hour zone and then going 40-50 miles per hour in a 25 miles per hour zone; where the third officer had proceeded to an intersection located in the direction the suspect has heading where he stopped traffic and observed the suspect's van down the road moving between vehicles in the fast

and slow lanes; where as the van was moving forward slowly the third officer stepped toward the van and heard the van scrape one of the cars that had been stopped in the road; when the van was about a car's length away, the officer drew his revolver and when the suspect saw the pistol he ducked down; where although it was disputed whether the van stopped or continued to move it was undisputed that the van touched the officer's left hand and forearm and his shins at which time the officer fired into in a downward direction where the suspect had ducked, and the officer had to jump to the left when he felt the vehicle lurch forward).

II. <u>Analysis/Argument</u>

Defendant Botelho's motion for reconsideration should be denied because the authority upon which he relies does not demonstrate any intervening change in controlling law sufficient to support a reversal of this court's prior denial of qualified immunity. <u>Carnell v. Grimm et al.</u>, 872 F.Supp. 746, 758 (D.C.HI 1994)("Courts have established only three grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the discovery of new evidence not previously available; and (3) the need to correct clear and manifest error in law or fact, to prevent manifest injustice.").

In his prior decision Judge Ezra correctly recognized that taken in the light most favorable to Plaintiff, the facts show that Plaintiff was awakened by his friend, Justin Aoki, at 3:00 a.m. on April 17, 2002 while asleep in the rear seat of Aoki's

car. Aoki warned Plaintiff to get up because the police were arriving and Plaintiff got scared because as a parolee in an unrelated case he was afraid of being arrested. As a result, Plaintiff jumped into the front seat of the vehicle intending to flee. When Plaintiff jumped into the driver's seat, Defendant Botelho approached the front passenger side of the vehicle and Plaintiff locked the doors. Plaintiff then reversed the car (i.e., away from Defendant Botelho) in an attempt to flee and as he was doing so Defendant Botelho, without any warning, drew his gun and fired it at Plaintiff striking him in the left side of his neck. Defendant Botelho never attempted to open the passenger door of the vehicle and Plaintiff never accelerated toward Defendant Botelho before being shot by Defendant Botelho. Order Denying in Part and Granting in Part Defendant Joseph Botelho's Motion for Summary Judgment and County of Hawai'i's Motion for Summary Judgment, filed August 5, 2004.

Justin Aoki, who witnessed the events, reported that when Plaintiff stopped his car after backing out of the parking stall, Defendant Botelho drew his gun and shot Plaintiff through the windshield of the vehicle from a distance of about 20 feet. Statement of Justin Aoki taken on April 17, 2002, pp. 7-8 of 13, Exhibit A attached to Plaintiff's Response to Defendants Joseph Botelho and County of Hawai'i's Separate Concise Statement of Facts in Support of Their Motions for Summary Judgment filed April 19, 2004.

There also are serious factual inconsistencies about Defendant Botelho's claim that he could not get out of the path of the vehicle. In his initial statement taken on April 17, 2002, Defendant Botelho stated that he could have avoided the vehicle by continuing his movement to the left. See Statement of Joseph Botelho taken on April 17, 2002, p. 19, Exhibit B attached to Plaintiff's Response to Defendants Joseph Botelho and County of Hawai'i's Separate Concise Statement of Facts in Support of Their Motions for Summary Judgment filed April 19, 2004.

Defendant Botelho also claims that because Plaintiff was accelerating the vehicle toward him he shot Plaintiff through the middle of the windshield; however, in his initial statement on the day of the incident, Officer Amuimuia reported that the bullet hole he saw in the windshield was on the bottom part of the passenger side of the vehicle. Statement of Fetuutuunai Amuimuia taken on April 17, 2002, p. 13, Exhibit C attached to Plaintiff's Response to Defendants Joseph Botelho and County of Hawai'i's Separate Concise Statement of Facts in Support of Their Motions for Summary Judgment filed April 19, 2004.

Accordingly, when viewed in the light most favorable to Plaintiff for the purposes of this motion, the evidence shows that Defendant BOTELHO had no objective basis for believing that PLAINTIFF posed an immediate and significant threat of serious physical harm to anyone, but he shot him anyway. Defendant submits no undisputed evidence showing that his shooting of

Plaintiff was preceded by a violent, dangerous and/or protracted chase by officers which showed Plaintiff "would do almost anything to avoid capture and that he posed a major threat to [others]," Brosseau, 543 U.S. 200, 125 S.Ct. 600, 160 L.Ed.2d ___.

Because the facts in this case clearly do not fall within the scope of Brosseau, supra or Randall v. City of Fairbanks, supra, the controlling law is insufficient to support a reversal of this court's prior denial of qualified immunity.

DATED: Honolulu, Hawaii, __January 26__, 2006.

_____
ERIC A. SEITZ
LAWRENCE I. KAWASAKI

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| WENDELL TANGARO, ) | CIVIL NO. 03-00211 DAE/LEK |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CERTIFICATE OF SERVICE |
| ) | |
| JOSEPH BOTELHO, COUNTY OF ) | |
| HAWAI'I, AND JOHN DOES 1-10, ) | |
| ) | |
| Defendants. ) | |
| ) | |

CERTIFICATE OF SERVICE

I DO HEREBY CERTIFY that one copy of the within was duly served this date by U.S. Mail, first-class, postage pre-paid to the following at the address listed below:

    HARRY FREITAS, ESQ.
    Deputy Corporation Counsel
    County of Hawai'i
    Hilo Lagoon Centre
    101 Aupuni Street, Suite 325
    Hilo, Hawai'i 96720

    Attorney for Defendants
    Joseph Botelho and County of Hawai'i

DATED: Honolulu, Hawaii, __January 26__, 2006.

_____
ERIC A. SEITZ