IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WENDELL TANGARO, | ) CIVIL NO. 03-00211 JMS/BMK |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) ORDER DENYING MOTION FOR |
| | ) RECONSIDERATION OF |
| JOSEPH BOTELHO, COUNTY OF | ) DEFENDANT JOSEPH BOTELHO'S |
| HAWAI'I, AND JOHN DOES 1-10, | ) MOTION FOR SUMMARY |
| | ) JUDGMENT |
| Defendants. | ) |
| _____ | ) |

ORDER DENYING MOTION FOR RECONSIDERATION OF DEFENDANT
JOSEPH BOTELHO'S MOTION FOR SUMMARY JUDGMENT

I. INTRODUCTION

Hawaii County Police Department (HCPD) Officer Joseph Botelho has moved the court to reconsider Judge Ezra's August 5, 2004 Order. That Order denied Officer Botelho's motion for summary judgment; although Officer Botelho argued that he was entitled to qualified immunity (and therefore summary judgment), Judge Ezra found that there were genuine issues of material fact precluding summary judgment. Officer Botelho's motion for reconsideration argues that the United States Supreme Court's decision in *Brosseau v. Haugen*,

543 U.S. 194 (2004) (per curiam), issued after Judge Ezra's Order, constitutes an "[i]ntervening change in law," Local Rule (L.R.) 60.1(b), sufficient to warrant overturning Judge Ezra's prior Order.  Based on the following, the court DENIES Officer Botelho's motion for reconsideration.

## II.  BACKGROUND

Judge Ezra set forth the background facts relevant to the instant case in his August 5, 2004 Order.  The court incorporates those background facts herein.  In short, Judge Ezra found that there are genuine issues of material fact as to whether Tangaro was accelerating the vehicle in Officer Botelho's direction and whether Officer Botelho was in any danger of being struck by the vehicle.

## III.  STANDARD OF REVIEW

"Three grounds justify reconsideration of an order: (i) an intervening change in controlling law, (ii) the availability of new evidence, and (iii) the need to correct clear error or prevent manifest injustice." *Arakaki v. Lingle*, 299 F. Supp. 2d 1129, 1130 (D. Haw. 2003); *see also* L.R. 60.1 (providing that reconsideration is only permitted where there is "(a) Discovery of new material facts not previously available; (b) Intervening change in law; [or] (c) Manifest error of law or fact.").

## IV. DISCUSSION

The Supreme Court has recently clarified the test for determining whether a police officer is entitled to qualified immunity:

> When confronted with a claim of qualified immunity, a court must ask first the following question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S., at 201, 121 S.Ct. 2151. . . . [C]laims of excessive force are to be judged under the Fourth Amendment's " 'objective reasonableness' " standard. [*Graham v. Connor*, 490 U.S. 386,] 388, 109 S.Ct. 1865.
> . . . .
> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted. *Saucier v. Katz*, 533 U.S., at 206, 121 S.Ct. 2151 (qualified immunity operates "to protect officers from the sometimes 'hazy border between excessive and acceptable force' "). Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.
> It is important to emphasize that this inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.*, at 201, 121 S.Ct. 2151. As we previously said in this very context:
>
>> "[T]here is no doubt that *Graham v. Connor*, *supra*, clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. Yet that is not enough. Rather, we emphasized in

3

> *Anderson* [v. *Creighton*,] 'that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' 483 U.S. [635,] 640[, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)]. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

*Brosseau v. Haugen*, 543 U.S. at 198-99 (quoting *Saucier*, 533 U.S. at 201-202) (some alterations in original and some added).

   In the instant motion, the dispute rests on the second prong of the qualified immunity analysis: whether the contours of Tangaro's constitutional rights were sufficiently clear that a reasonable officer in Officer Botelho's position would have known that using deadly force against Tangaro violated those constitutional rights. The court concludes that if Tangaro's version of events is correct -- that is, if Tangaro put the car in reverse in an attempt to flee the scene, but did not endanger Officer Botelho -- then Officer Botelho violated a clearly established constitutional right and is not entitled to qualified immunity. Therefore, the court DENIES Officer Botelho's motion for reconsideration because there are genuine issues of material fact.

A police officer may not use deadly force to prevent the escape of an individual who poses no danger to the officers or to the community. *Tennessee v. Garner*, 471 U.S. 1, 3 (1985) ("We conclude that [deadly] force may not be used unless it is necessary to prevent the escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others."); *Acosta v. City & County of San Francisco*, 83 F.3d 1143, 1148 (9th Cir. 1996) ("Because the law governing 'shooting to kill' a fleeing suspect is clearly established and because a reasonable officer could not have reasonably believed that shooting at the driver of the slowly moving car was lawful, we hold that [the officer] is not entitled to qualified immunity."). This law was clearly established at the time Officer Botelho shot Tangaro. If a jury accepts the Plaintiff's version of events, then Officer Botelho's conduct was clearly outside the bounds of acceptable force.

*Brosseau* did nothing to change this principle. The officer in *Brosseau* had "arguable probable cause to believe that the suspect posed an imminent threat of serious physical harm to several officers and citizens in the immediate surrounding area." *Smith v. Cupp*, 430 F.3d 766, 776 (6th Cir. 2005). In contrast, if Tangaro's version of events is correct, Officer Botelho had no

reason to suspect that Tangaro posed any danger to anyone.[1]  Therefore, the general principle from *Tennesse v. Garner* -- that an officer may not use deadly force to prevent the escape of an individual who poses no danger to the officers or to the community -- clearly establishes the constitutional right in the instant case. *See id.* at 776 ("The absence of any *Garner* preconditions to the use of deadly force makes this an 'obvious' case and distinguishes it from *Brosseau*. . . . Unlike the situation in *Brosseau*, [the plaintiff and the officer] never struggled, [the plaintiff] never displayed any violent tendencies, and the facts support a finding that a reasonable officer . . . would not have perceived danger to anyone at the scene.").

In the instant case, the parties do not dispute that the officers at the scene knew nothing about Tangaro other than that he was possibly connected to the theft of quarters from some washing machines.  Whereas the suspect in *Brosseau* "had proven he would do almost anything to avoid capture," 543 U.S. at 200 (citation and internal quotation signals omitted), the suspect in the instant case --

---

[1] The Declaration of Officer Jason Grouns, attached to Officer Botelho's Reply Memorandum, does not conclusively establish that Tangaro presented a danger to the officers or to individuals in the surrounding area.  Officer Grouns states that "[t]he suspect vehicle began to move forward towards Officer Botelho" and that "the suspect vehicle approached [Officer Botelho] rather quickly." *Declaration of Jason Grouns at 3*.  Officer Grouns does not claim that he feared for the safety of individuals in the surrounding area, nor does his declaration negate the genuine issues of material fact that are present in this case.

according to the Plaintiff -- did not act with the same level of recklessness or dangerousness.

In sum, Judge Ezra correctly denied Officer Botelho's motion for summary judgment. *Brosseau* does not represent an intervening change in law, such that the court will not overturn Judge Ezra's Order.

## V.  CONCLUSION

Based on the foregoing, Officer Botelho's Motion for Reconsideration is DENIED.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 14, 2006.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Tangaro v. Botelho et al.*, Civ. No.  03-00211 JMS/LEK; Order Denying Motion for Reconsideration of Defendant Joseph Botelho's Motion for Summary Judgment