# ORIGINAL

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAI'I

*Cv. 03-211*

| | | |
|---|---|---|
| WENDELL TANGARO, | ) | CV NO 03-0021 DAE/LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **FILED IN THE** |
| | ) | **UNITED STATES DISTRICT COURT** |
| JOSEPH BOTELHO, COUNTY OF | ) | **DISTRICT OF HAWAII** |
| HAWAI'I, AND JOHN DOES 1-10, | ) | AUG 05 2004 |
| | ) | |
| Defendants. | ) | at 3 o'clock and 25 min. P.M. |
| | ) | WALTER A. Y. H. CHINN, CLERK |

## ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT JOSEPH BOTELHO'S MOTION FOR SUMMARY JUDGMENT AND COUNTY OF HAWAI'I'S MOTION FOR SUMMARY JUDGMENT

The court heard Defendants' Motions on August 2, 2004. Eric A. Seitz, Esq., appeared at the hearing on behalf of Plaintiff; Harry P. Freitas, Esq., appeared at the hearing on behalf of Defendants. After reviewing the motion and the supporting and opposing memoranda, the court DENIES IN PART and GRANTS IN PART Defendants Joseph Botelho and the County of Hawai'i's Motions for Summary Judgment.

## BACKGROUND

On April 17, 2002, Plaintiff Wendell Tangaro ("Plaintiff") was shot in the neck by Defendant Officer Joseph Botelho ("Defendant Botelho") of the

**EXHIBIT "B"**

Hawai`i Police Department ("HPD") while he was attempting to flee from Defendant Botelho in an automobile.

On March 5, 2003, Plaintiff filed a Complaint for Damages ("Plaintiff's Complaint") against Defendant County of Hawai`i ("Defendant County") and Defendant Botelho. In his complaint, Plaintiff argues that Defendant Botelho shot him in the neck without probable, sufficient, just, or reasonable cause in violation of the Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments to the Constitution of the United States, and 42 U.S.C. § 1983. Plaintiff's Complaint, at 4. Additionally, Plaintiff alleges that Defendant County failed to properly train, supervise and/or discipline Defendant Botelho, which proximately and directly caused his injury. Id. Finally, Plaintiff maintains that Defendant Botelho acted knowingly, deliberately, intentionally, and maliciously without regard for Plaintiff's rights and well-being. Id. at 4-5.

In Plaintiff's Complaint, he alleges that at 3 o'clock in the morning on April 17, 2002, he was awakened by his friend, Justin Aoki ("Aoki"), while asleep in the rear seat of Aoki's automobile. Aoki warned Plaintiff that the police were arriving at the scene and then fled from the vehicle. Plaintiff's Complaint, at 3. Plaintiff states that at the time, he was out of jail on parole for an unrelated incident and was afraid that he would be rearrested if the police saw him. Id. As a

2

result of this fear, Plaintiff claims that he jumped in the front seat of the vehicle intending to flee.  Id.  As Plaintiff jumped into the front seat, Defendant Botelho approached the front of the vehicle and stood in front of it.  Id.  Plaintiff maintains that he reversed the car in an attempt to flee and was shot in the neck by Defendant Botelho.  Id.

On February 11, 2004, Defendant Botelho filed a Motion for Summary Judgment ("Defendant Botelho's Motion").  On the same date, Defendant County filed a separate Motion for Summary Judgment ("Defendant County's Motion").  Defendants' version of the facts, as proffered in their moving papers, differs markedly from those stated by Plaintiff.  Defendants explain that on April 17, 2002, they were called to the scene of a potential robbery of a laundromat owned by Roger Starbuck ("Starbuck").  Defendant Botelho's Motion, at 2.  Officer Amuimuia of the HPD responded to the call and noticed a male seated in a sedan parked across the street from the laundromat.  Id.  Officer Amuimuia suspected that Aoki was the perpetrator of the alleged robbery because Aoki was holding coins and his car had the same license plate numbers as those reported to the police.  Id.  Officer Amuimuia requested that Aoki exit the vehicle and step to the rear of the vehicle.  Id.

3

Defendant Botelho arrived on the scene and witnessed Officer Amuimuia speaking with Aoki. Id. Defendant Botelho claims that he then noticed Plaintiff lying in the rear of the vehicle. Id. Defendant Botelho states that when he returned to his vehicle to get his notebook, he realized that Aoki was no longer standing at the rear of the vehicle and had returned to the driver's seat of his vehicle. Aoki appeared to be talking to Plaintiff who was still lying in the backseat. Id. at 3. As Defendant Botelho approached Aoki's vehicle, he alleges that Plaintiff exited the rear of the vehicle, pulled Aoki out of the driver's side of the car, and entered the driver's seat. Id. As Defendant Botelho attempted to open the passenger door of Aoki's vehicle, Plaintiff allegedly locked the passenger side door. Id. Defendant Botelho states that he then reached through the partially open window of the passenger door to unlock the door that Plaintiff had just locked. Id. In response to Defendant Botelho's actions, Defendant Botelho claims that Plaintiff revved the engine and accelerated the vehicle slightly forward and then accelerated in reverse, while simultaneously turning the vehicle. Id. at 4.

Defendant Botelho alleges that he yelled for Plaintiff to stop but that Plaintiff continued to accelerate forward in Defendant's direction. Id. Defendant Botelho maintains that he kept on moving left in order to get out of the way of the accelerating vehicle but feared that he would be unable to move out of the path of

4

the vehicle and would be struck by the accelerating sedan. Id. at 4-5. Fearing he would be injured, Defendant Botelho states that he drew his firearm and fired once at the accelerating vehicle. Id. at 5. Defendant maintains that the bullet entered the center of the front windshield and struck Plaintiff in the neck. Id.

On April 19, 2004, Plaintiff filed Plaintiff's Response To Defendants Joseph Botelho and County of Hawai'i's Separate Concise Statement of Facts In Support of Their Motions for Summary Judgment ("Plaintiff's April 19, 2004 Response"). Also on April 19, 2004, Plaintiff filed Plaintiff's Memorandum in Opposition to Defendants Joseph Botelho and County of Hawai'i's Motions For Summary Judgment ("Plaintiff's April 19, 2004 Opposition"). On June 18, 2004, Defendant County submitted copies of the personnel files of the officers involved in the instant cases pursuant to Plaintiff's First Request for Documents.

On July 14, 2004, Plaintiff filed Plaintiff's Supplemental Memorandum in Opposition to Defendants Joseph Botelho's and County of Hawai'i's Motions for Summary Judgment ("Plaintiff's Supplemental Memorandum"). On the same date, Plaintiff filed Plaintiff's Supplemental Response to Defendants Joseph Botelho and County of Hawai'i's Separate Concise Statement of Facts in Their Motions for Summary Judgment ("Plaintiff's Supplemental Response").

5

On July 22, 2004, Defendant County filed a Reply to Plaintiff's Supplemental Memorandum In Opposition To Defendants Joseph Botelho and County of Hawai`i's Motions For Summary Judgment. ("Defendant County's Reply To Plaintiff's Supplemental Memorandum"). On the same date, Defendant County filed a Separate Concise Statement of Facts in Reply to Plaintiff's Supplemental Memorandum in Opposition to Defendants Joseph Botelho and County of Hawai`i's Motions For Summary Judgment. ("Defendant County's Statement of Facts"). Additionally, on July 22, 2004, Defendant Botelho filed his Reply to Plaintiff's Supplemental Memorandum ("Defendant Botelho's Reply to Plaintiff's Supplemental Memorandum") and his own Separate Concise Statement of Facts in Reply to Plaintiff's Supplemental Memorandum in Opposition to Defendants Joseph Botelho and County of Hawai`i's Motions For Summary Judgment ("Defendant Botelho's Statement of Facts"). Both Defendants filed the aforementioned documents to explain and dispute
the allegations made by Plaintiff in his Supplemental Memorandum.

## STANDARD OF REVIEW

As set forth in Federal Rule of Civil Procedure 56(c), summary judgment shall be entered when:

6

> . . . the pleadings, depositions, answers to interrogatories,
> and admissions on file, together with the affidavits, if
> any, show that there is no genuine issue of material fact
> and that the moving party is entitled to judgment as a
> matter of law.

Fed. R. Civ. P. 56(c) (2003).

In its motion for summary judgment, the moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact and that the court may rule on the issues as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970)). Despite this burden, the moving party need not produce evidence negating the existence of an element for which the opposing party will bear the ultimate burden of proof at trial. See id. at 323.

Once the movant has met its initial burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. See Fed. R. Civ. P. 56(e). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987); Fed. R. Civ. P. 56(e). Moreover, there is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for

the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475
U.S. 574, 587 (1986) (citation omitted).

　　　　A material fact is one that may affect the decision, so that the finding
of that fact is relevant and necessary to the proceedings. See Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue is shown to exist if
sufficient evidence is presented such that a reasonable fact finder could decide the
question in favor of the nonmoving party. See id. The evidence submitted by the
nonmovant in opposition to a motion for summary judgment "is to be believed,
and all justifiable inferences are to be drawn in [its] favor." Id. at 255.

　　　　In ruling on a motion for summary judgment, the court must bear in
mind the actual quantum and quality of proof necessary to support liability under
the applicable law. See id. at 254. The court must assess the adequacy of the
nonmovant's response and must determine whether the showing the nonmovant
asserts it will make at trial would be sufficient to carry its burden of proof. See
Celotex, 477 U.S. at 322.

　　　　Although highly fact-based cases are not generally suitable for
summary judgment, the nonmoving party must demonstrate that sufficient
evidence of a factual dispute exists to require a jury or judge to resolve the parties'
differing versions of the truth at trial. In ruling on such a motion, this court may

8

not make credibility determinations or weigh conflicting evidence. See Musick v. Burke, 913 F.2d 1390, 1394 (9th Cir. 1990).

## DISCUSSION

### I.    Qualified Immunity

Defendant Botelho asserts that the court should grant his motion for summary judgment on the theory of qualified immunity. He maintains that he is entitled to qualified immunity because he is able to show that "a reasonable officer would have believed his conduct was reasonable in light of all the facts and circumstances of the instant case." Defendant Botelho's Motion, at 8. Defendant Botelho contends that he did not provoke the situation giving rise to Plaintiff's claim. Id. at 11. Rather, Defendant Botelho maintains that the undisputed facts demonstrate that he was investigating a theft in progress when Plaintiff attempted to flee and almost ran over him. Id. Defendant Botelho claims that he had probable cause to believe that his life was in danger and only fired his gun in self-defense. Id. He avers that due to the immediacy of the threat, he was precluded from using a less lethal type of force. Id. at 12. Further, Defendant Botelho claims that he is entitled to qualified immunity because he acted reasonably considering the totality of the circumstances. Finally, he contends that an officer in a similar situation would have acted in the same way. Id. at 12.

9

Plaintiff alleges that Defendant Botelho's Motion should be denied because there are many issues of material fact relevant to his claim of qualified immunity that are contested and must be determined by the trier of fact. Plaintiff's April 19, 2004 Opposition, at 5. Plaintiff argues that he does not remember Defendant Botelho attempting to open the passenger side of the car before he locked the door. April 19, 2004 Response, at 2. Additionally, Plaintiff claims that his vehicle never accelerated forward or toward Defendant Botelho before Defendant Botelho shot him in the neck. Tangaro Decl. at ¶ 1. He argues that Defendant Botelho could have avoided Plaintiff's vehicle by continuing to move to the left. April 19, 2004 Response, at 2.

Finally, Plaintiff maintains that the bullet entered the bottom part of the passenger side of the windshield and not the center, as Defendant Botelho alleges. Amuimuia Decl. at ¶ 13, Ex. C to April 19, 2004 Response. Presumably, Plaintiff disputes the location of the bullet hole in order to demonstrate that Defendant was not directly in the path of the moving vehicle, but was actually standing to the left of the vehicle and should have been able to move out of the way of the vehicle. Accordingly, Plaintiff maintains that Defendant Botelho had no reasonable basis for believing that Plaintiff posed an immediate and significant threat of serious physical harm. Plaintiff's April 19, 2004 Opposition, at 7.

10

Plaintiff, therefore, asserts that Defendant Botelho is not entitled to the qualified immunity defense.

The threshold inquiry in a qualified immunity analysis is whether the plaintiff's allegations, if true, establish a constitutional violation. Wilkins v. City of Oakland, 350 F.3d 949, 954 (9th Cir. 2003). If a constitutional violation is found to have occurred, the court must then determine whether the use of force was reasonable. Id. at 955. An officer may reasonably use deadly force when he "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer[s] or to others." Tennessee v. Garner, 471 U.S. 1, 11 (1985). The Ninth Circuit has held that if the officer's mistake as to what the law requires is reasonable, then he is entitled to qualified immunity. Saucier v. Katz, 533 U.S. 194, 201 (2001).

In determining whether a particular use of force was reasonable, the court must view the relevant events from the perspective of a reasonable officer on the scene. It must allow for the fact that police officers are often forced to make instantaneous judgments – in circumstances that are tense, uncertain, and rapidly evolving– about the amount of force that is necessary in a particular situation. Estate of Martinez v. City of Federal Way, 2004 WL 1543208, at *1 (9th Cir. Jul. 02, 2004) quoting Graham v. Connor, 490 U.S. 386, 397 (1989).

11

Considering the facts in the light most favorable to Plaintiff, a court could find that Defendant Botelho maliciously and unjustifiably used excessive force in violation of Plaintiff's constitutional and statutory rights. However, Plaintiff and Defendant Botelho both raise material issues of fact regarding the necessity of the force actually employed by Defendant Botelho. Plaintiff argues that he was reversing the vehicle away from Defendant at the time Defendant Botelho shot him and that Defendant Botelho was never at risk. If Plaintiff actually was reversing and Defendant Botelho was not in the path of the moving vehicle, he likely would not be entitled to qualified immunity. Conversely, Defendant Botelho maintains that Plaintiff accelerated the vehicle forward in his direction and that he had to fire his weapon in self-defense.

Since both Plaintiff and Defendant Botelho dispute several issues material to Plaintiff's claim, the court is precluded from ruling in favor of Defendant Botelho on a Motion for Summary Judgment. Instead, the facts at issue must be left to a trier of fact. See Santos v. Gates, 287 F.3d 846, 855 n.12 (9th Cir. 2002)(finding it premature to decide the qualified immunity issue "because whether the officers may be said to have made a 'reasonable mistake' of fact or law depends on the jury's resolution of disputed facts and the inferences it draws therefrom")(internal citations omitted). Therefore, because Plaintiff's excessive

12

force claim turns on material facts that are in dispute, the court DENIES

Defendant Botelho's Motion for Summary Judgment.

> II.    Respondeat Superior

Plaintiff alleges that Defendant Botelho has a propensity for using

force and has a history of violent behavior. Plaintiff's Supplemental

Memorandum, at 2. Additionally, Plaintiff maintains that Defendant County was

aware of Defendant Botelho's history and failed to supervise and/or discipline

him. Id. In Plaintiff's Supplemental Response, Plaintiff lists three instances in

which Defendant Botelho allegedly acted violently or with excessive force, as

documented in the personnel files produced pursuant to Plaintiff's First Document

Request. Plaintiff maintains that Defendant County's failure to sanction

Defendant Botelho, despite his consistent use of excessive force, demonstrates a

policy of deliberate indifference. Id. at 6.

In contrast, Defendant County asserts that it cannot be held liable for

the individual actions of its police officers under 42 U.S.C. § 1983. Defendant

County's Motion, at 6. Defendant County maintains that there is no admissible

evidence that it condoned the use of excessive force. Defendant County's Motion,

at 7. In fact, Defendant County asserts that the County has policies discouraging

excessive and malicious use of physical force. Defendant County's Motion, at 8.

Defendant County claims that it thoroughly investigated all three complaints filed

against Defendant Botelho, which alone demonstrates a consistent effort to

supervise and discipline the officers of the HPD. Defendant County's Reply To

Plaintiff's Supplemental Memorandum, at 2-3. Defendant County also argues that

Defendant Botelho does not have a propensity for violence as demonstrated by the

fact that he was exonerated in two of the three alleged incidents upon which

Plaintiff relies to prove a history of excessive force. Id.

      The court recognizes that § 1983 liability may not be predicated upon

respondeat superior. Ross v. City of Toppenish, 2004 WL 1594952, *1 (9th Cir.

June 11, 2004). Instead, the United States Supreme Court has held that municipal

liability will attach only where "a deliberate choice to follow a course of action is

made from among various alternatives by the official or officials responsible for

establishing final policy with respect to the subject matter in question." Pembaur

v. City of Cincinnati, 475 U.S. 469, 480-81 (1986). Additionally, the court notes

that the Ninth Circuit has found that a Plaintiff may establish municipal liability in

one of three ways:

> First, the plaintiff may prove that a city employee
> committed the alleged constitutional violation pursuant

14

> to a formal governmental policy or a longstanding
> practice or custom which constitutes the standard
> operating procedure of the local governmental entity.
> Second, the plaintiff may establish that the individual
> who committed the constitutional tort was an official
> with final policy-making authority and that the
> challenged action itself thus constituted an act of official
> governmental policy. Whether a particular official has
> final policy-making authority is a question of state law.
> Third, the plaintiff may prove that an official with final
> policy-making authority ratified a subordinate's
> unconstitutional decision or action and the basis for it.

Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992).

In his complaint, Plaintiff argues only that Defendant County is liable

because it has a policy, and/ or custom of permitting excessive force. Plaintiff

alleges that Defendant Botelho has exercised excessive force three times while

serving as a police officer for the HPD. Plaintiff's Supplemental Memorandum, at

2-3. Plaintiff claims that Defendant County never disciplined Defendant Botelho

for the above incidents and that in failing to condemn his actions, Defendant

County failed to properly train, supervise and/or discipline Defendant Botelho. Id.

Defendant County explains that the alleged incidents were thoroughly

investigated by the Internal Affairs of the County of Hawai`i Police Department or

by an independent investigator. Defendant County's Reply to Plaintiff's

Supplemental Memorandum, at 4-7. Defendant County states that it acted upon

15

each of the three complaints against Defendant Botelho and has taken the

appropriate measures to investigate and remedy the situation. For example, on

December 24, 1994, Defendant Botelho allegedly swore at and attempted to choke

a member of the public. Plaintiff's Supplemental Memorandum, at 3. Defendant

County states that, as a result of an HPD internal investigation, Defendant Botelho

was suspended from the HPD for twelve days. Additionally, Defendant Botelho

was criminally prosecuted, sentenced to one-year probation, sixty days of

suspended prison time, a $250 fine and 250 hours of community service.

Defendant Botelho also subsequently received additional training in Police

Dynamics, Violence in the Workplace, and the Use of Force Scenario. Defendant

County's Reply to Plaintiff's Supplemental Memorandum, at 4-5.

       The court finds that Plaintiff has not provided the court with any

evidence that Defendant County failed to adequately and appropriately supervise,

train, or discipline Defendant Botelho. Plaintiff has not submitted any

declarations or affidavits to prove that Defendant Botelho's use of excessive force

was effectuated pursuant to a formal governmental policy or a longstanding

practice or custom that constitutes the standard operating procedure of the HPD.

Indeed, on the one occasion when Defendant Botelho was found to have used

excessive force, his conduct was not tolerated and he was appropriately charged

16

and punished. On the record presently before the court, the court cannot find that under any of the facts alleged, Defendant County is liable under 42 U.S.C. § 1983. Therefore, the court GRANTS Defendant County's Motion for Summary Judgment.

CONCLUSION

For the reasons stated above, the court DENIES Defendant Joseph Botelho's Motion for Summary Judgment and GRANTS County of Hawai`i's Motion for Summary Judgment.

IT IS SO ORDERED.

DATED: Honolulu, Hawai`i, __AUG 05 2004__ .

DAVID ALAN EZRA
CHIEF UNITED STATES DISTRICT JUDGE

Wendell Tangaro vs. Joseph Botelho, et al., CV No. 03-00211 DAE/LEK;
ORDER DENYING DEFENDANT JOSEPH BOTELHO'S MOTION FOR
SUMMARY JUDGMENT AND GRANTING DEFENDANT COUNTY OF
HAWAI`I'S MOTION FOR SUMMARY JUDGMENT